ENVIRONMENTAL DEFENSE FUND, INC., Committee For Leaving the Environment of America Natural, Glenn H. Clemmer, G. Randall Grace, and F. Glenn Liming, Plaintiffs,

National Audubon Society, Birmingham Audubon Society, and the Alabama Conservancy, Intervening Plaintiffs,

v.

Clifford R. ALEXANDER, the United States Army Corps of Engineers, and Major General John Morris, Defendants,

Tombigbee River Valley Water Management District, Tennessee-Tombigbee Waterway Development Authority, State of Alabama, and Tombigbee Valley Development Authority, Intervening Defendants.

LOUISVILLE AND NASHVILLE RAILROAD, Plaintiff,

National Audubon Society, Birmingham Audubon Society, and the Alabama Conservancy, Intervening Plaintiffs,

v.

Clifford R. ALEXANDER, the United States Army Corps of Engineers, and Major General John Morris, Defendants,

Tombigbee River Valley Water Management District, Tennessee-Tombigbee Waterway Development Authority, State of Alabama, and Tombigbee Valley Development Authority, Intervening Defendants.

Nos. EC 77–53–K, EC 77–54–K.

United States District Court, N.D. Mississippi, E.D.

Sept. 2, 1981.

Consent Agreement and Order Dec. 30, 1981.

Memorandum Order July 20, 1982.

Plaintiffs were not entitled to continuation of suspension of work on a navigation project previously agreed to since Army Corps of Engineers filed supplemental environmental impact statement, as required by previous court order and within prescribed time, so that Corps was not in default and there was no basis for issuance of injunctive relief.

---

## FIRST ORDER ON REMAND

KEADY, Chief Judge.

In obedience to the August 24, 1981, mandate of the United States Circuit Court of Appeals for the Fifth Circuit issued herein pursuant to opinions released July 13 and August 17 which affirmed in part and reversed in part the final judgment of this court rendered October 1, 1980, 501 F.Supp. 742, it is

ORDERED

■ 1. That summary judgment be granted in favor of plaintiff Louisville & Nashville Railroad Company on the claim that the federal defendants, Secretary of the Army and the United States Army Corps of Engineers, are in violation of the Water Resources Development Act of 1974, 42 U.S.C. § 1962d–17, as well as Engineer Regulation 405–2–680, for having used a lower interest rate formula provided by 42 U.S.C. § 1962d–17(b) to discount future benefits and compute costs of the Tennessee-Tombigbee Waterway (TTW). Accordingly, federal defendants are ordered and directed to cease using the lower formula and utilize instead in all future cost-benefit computations for the TTW the higher interest rate formula specified in 42 U.S.C. § 1962d–17(a).

■ 2. That summary judgment be granted in favor of all plaintiffs on their claim that the federal defendants, Secretary of the Army and United States Army Corps of Engineers, in the course of planning and constructing the TTW, are in violation of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. as well as relevant Corps regulations for failing to prepare and submit a supplemental Environmental Impact Statement (EIS) on the project changes made since March 1971, when the original EIS on the navigation project was submitted. Accordingly, the federal defendants are hereby ordered and directed to prepare and submit a final supplemental EIS covering changes in the economic projections and design of the Waterway since the 1971 EIS, for detailed discussion and analysis of at least the following issues, in accordance with Corps Regulations:

(a) Impacts from changes in post-1971 projections of traffic levels, directions and cargo estimated for the TTW.

(b) Impacts from the increased acres of land planned for acquisition and use in the project over and above the land planned for the Waterway's acquisition and use in the 1971 EIS.

(c) Impacts from the planned substitution of a chain of lakes design for the perched canal in the so-called "canal section" of the Waterway.

(d) Impacts from the planned straightening of the Tombigbee River by artificial cutoffs to isolate 21 miles of the river channel.

The court determines from the record made at today's pretrial conference that June 1, 1982, represents the expiration of a reasonable time to be allowed for the submission of a final supplemental EIS. Therefore, federal defendants shall, not later than June 1, 1982, submit to the court a final supplemental EIS by filing same with the clerk of court and concurrently serving copy upon plaintiffs' counsel. Plaintiffs shall have 60 days from receipt of the final sup-

plemental EIS within which to file written objections, stating the grounds therefor, with the clerk of court. If no such objections are made within this period of time or such additional time as the court may for good cause allow, federal defendants may apply to the court for a final order terminating this action. Should timely objections be interposed by plaintiffs, the court shall, upon notice to all parties, after allowing discovery for a reasonable period of time, conduct an evidentiary hearing to resolve issues raised by plaintiffs as to the sufficiency of the final supplemental EIS as well as the Corps' compliance, both procedurally and substantively, with NEPA and relevant Corps regulations, and enter a final order. At any such evidentiary hearing, plaintiffs shall have the burden of proof as to all issues raised in their objections.

3. At the pretrial conference this date attended by all attorneys, counsel agreed that they would endeavor to resolve the question of whether there is need for the court to immediately grant an injunction against the work presently in progress on those portions of the TTW for which a final supplemental EIS has been ordered, and that counsel would notify the court by September 17, 1981, as to the progress of their negotiations. All counsel having represented that a reasonable prospect exists for resolving this question and thereby obviating the necessary for an early hearing, it is ordered that the scheduling of an evidentiary hearing be deferred until further notice.

Jurisdiction of these causes is retained to effectuate the foregoing steps.

## CONSENT AGREEMENT AND ORDER

In an effort to implement the opinion of the United States Court of Appeals for the Fifth Circuit of July 13, 1981, that Court's subsequent order of August 17, 1981, and this Court's order of September 2, 1981, the parties have agreed, as set forth below, regarding the Tennessee-Tombigbee Waterway (TTW). Accordingly, it is hereby AGREED and ORDERED as follows:

1. *Duration of this Agreement and Order:* This Agreement and Order shall be in effect until sixty (60) days after the filing of the Supplemental Environmental Impact Statement (SEIS) with the Court. Any further proceedings in this case shall be in accordance with the Court's order of September 2, 1981, or such other order as the Court may enter.

The plaintiffs contend that this Agreement and Order should extend until the entry of a final order in this case. Defendants have agreed that this Agreement shall last only until sixty (60) days after the filing with the Court of the SEIS, and contend that no work suspension or other restraint would be appropriate after the time period provided for in this Agreement.

2. *New Construction Activity:* Upon approval of this Agreement and Order by the Court, and for the duration of this Agreement and Order, the Corps shall not award or proceed with the following new construction contracts: Aberdeen Reservoir Clearing (Contract No. DACW–01–80–C–0190), Lock C—Relocation of TVA Facilities and Lock C—Relocation of Tombigbee Electric Power Facilities; and the Corps shall not perform the work contemplated by these three contracts through any other contract or in any other manner. In addition, for the duration of this Agreement and Order, the Corps shall not engage in negotiations concerning relocation of these TVA Facilities, or in negotiations concerning the relocation of these Tombigbee Electric Power Facilities. The map attached as Appendix A approximately depicts the area covered by Contract No. DACW–01–80–C–0190, which contract precisely describes the work contemplated under the terms of that contract. Subject to the provisions of the following paragraph, all other measures to advertise, negotiate, modify, award, or proceed with new construction contracts presently scheduled for commencement prior to August 1, 1982, and all non-construction contracts, shall not be restrained for the duration of this Agreement and Order.

Defendants agree not to accelerate to a date prior to August 1, 1982 the awarding of any construction contracts presently scheduled to be awarded after August 1,

1982. All other measures to advertise, negotiate, modify, or proceed with new construction or non-construction contracts scheduled for commencement after August 1, 1982 shall not be restrained.

Defendants will provide plaintiffs with a list of all those construction contracts scheduled to be awarded after August 1, 1982. The defendants will also provide plaintiffs with a list of new non-construction contracts over $100,000 currently scheduled for award prior to August 1, 1982. These lists will be submitted to the plaintiffs on January 10, 1982.

Further, starting February 1, 1982, and for the duration of this Agreement and Order, the Corps will provide the plaintiffs with at least 30 days advance written notice of all planned awards of new construction contracts, and of all new non-construction contracts over $100,000, in the river and canal sections which are scheduled for award after March 1, 1982. In addition, on January 15, 1982, the Corps will provide plaintiffs with a list of all new construction contracts, and of all new non-construction contracts over $100,000, which were scheduled for award subsequent to July 12, 1981 and before March 1, 1982. The 30-day advance written notice requirement set out earlier in this paragraph is not applicable to the contracts which will be referenced in this January 15, 1982 list.

Finally, the 30-day advance written notice requirement referenced in this section need not be satisfied in the event of an emergency requiring rapid response by the Corps. In such event, the defendants will notify the plaintiffs' counsel as soon as possible of the nature of the emergency and of the nature of the planned response. Such notice will be given to the plaintiffs' counsel by the defendants by mail or otherwise in writing before the defendants take action in response to the emergency.

The plaintiffs contend that the advertisement or award of any contracts after August 1, 1982 is unlawful and expressly reserve the right to seek an extension or modification of this Order prohibiting such actions, or an order enjoining such activities. While defendants, solely for the purpose of reaching this Agreement, have agreed not to award or proceed with the three contracts specified above in this Section for the duration of this Agreement, defendants maintain that advertisement, award, and proceeding with any and all other contracts are lawful and appropriate and, moreover, that any further restraint would be inappropriate because, by the termination date provided in this Agreement, the Corps will have complied with the Court of Appeals decision through the expeditious preparation of the required SEIS.

3. *Ongoing Activity:* For the duration of this Agreement and Order, the Corps shall suspend construction on the following work in progress:

A. *Columbus Lake Navigation Channel*

Phase I: All work associated with excavation of the navigation channel from station 231 + 30 to station 290 + 00; station 365 + 00 to station 390 + 00; and all work associated with construction of and utilization of Disposal Area C–1.

Phase II: All work associated with excavation of the navigation channel from station 600 + 00 to station 760 + 00; and all work associated with construction of and utilization of Disposal Areas C–11, C–12, C–13 and C–15.

Phase III: All work associated with excavation of the navigation channel from station 960 + 00 to station 1035 + 00; and all work associated with construction of and utilization of Disposal Areas C–19 and C–20A.

The map attached as Appendix B accurately depicts the areas of the Columbus Lake Navigation Channel in which this construction shall be suspended for the duration of this Agreement and Order.

B. *Canal Section:* At Lock D the Corps shall not undertake any embankment construction associated with the left bank access road from station 442 + 00 to station 445 + 71.21. At Lock E, the Corps shall not undertake any embankment construction above elevation 323 MSL on the Esplanade access road and the Espla-

nade mound lying between Lock Station 658.00A and the center line of the upper pintle at station 0.00 (Road station 5 + 00 approximately to station 12 + 18 approximately). The maps attached as Appendix $C_1$ and $C_2$ accurately depict the areas at Locks D and E in which this construction shall be suspended for the duration of this Agreement and Order. In addition, the Corps will not fill the reservoirs at Locks B, C, D and E, but the pool at Lock A may be raised to elevation 217 MSL.

Although the defendants have agreed to the language of this sub-section regarding the filling of reservoirs at Locks B, C, D, and E, solely for the purpose of reaching this agreement with plaintiffs, defendants maintain that this language is unnecessary since the filling of those reservoirs will present no significant adverse environmental impacts, and at any rate is not scheduled to occur until well after the end of this Agreement and Order. The plaintiffs maintain that the filling of these reservoirs would in fact cause significant adverse environmental impacts, that it would prejudge the no-action alternative to project construction, and that for these reasons the filling should be allowed to occur, if at all, only after entry of a final order in this case.

4. *Connection with the Tennessee River:* For the duration of this Agreement and Order, the Corps shall not cause waters from the Tennessee River to mix with the waters of the Tombigbee River or the East Fork of the Tombigbee River. Although the defendants have agreed to this section for the sole purpose of reaching this agreement with plaintiffs, defendants maintain that said mixing of waters of the two rivers will present no significant adverse environmental impacts, and at any rate is not scheduled to take place until long after the end of this Agreement and Order. The plaintiffs maintain that the mixing of these waters would in fact cause significant adverse environmental impacts, that it would prejudge the no-action alternative to project construction, and that for these reasons the mixing should be allowed to occur,

if at all, only after the entry of a final order in this case.

5. *Report on the Post-1971 Lands:* On or before March 15, 1982, the Corps of Engineers shall file with the plaintiffs a detailed report on the project land which was not reflected or identified in the 1971 EIS, and which has since been added to the requirements for the project. The report shall include:

(a) An appendix which compiles all documents relied upon by the Corps in attempting to ascertain the location and description of the post-1971 lands.

(b) An identification and description of the location and type of records which were searched by the Corps or its agents in the attempt to ascertain the location and type of lands added to the project requirements since 1971, and the name, title, and location of the person who directly controlled the search for and analysis of those records. The defendants agree that the plaintiffs may, after April 1, 1982, take the deposition of the person identified in this paragraph. The parties agree that the deposition shall be limited to the subject matter of this paragraph, absent an order from the Court directing otherwise.

(c) A precise description of the manner in which the project acreage figure relied upon in the 1971 EIS was derived.

(d) An overlay map which clearly depicts the earliest known project taking lines in existence on or after 1971 and the project taking lines in existence as of the date this agreement is signed.

(e) An appendix which precisely delineates the current project boundaries.

The plaintiffs may raise issues regarding the post-1971 lands only after submission of the SEIS to the Court.

The plaintiffs contend that upon submission of the SEIS, the Court should delineate boundaries which reasonably approximate the 70,000 acres that were envisioned as part of the project in 1971 and that it may enter such orders as it deems appropriate as to the post-1971 lands. Defendants main-

tain that the Corps is dealing with the post-1971 lands issue in a legally adequate and reasonable manner in the SEIS, that the environmental impacts associated with the present project acreage are being addressed in the SEIS, and thus that no good purpose would be served by any judicial approximation and delineation of boundaries distinguishing between the 80,000-acre land-acquisition projection appearing in the 1971 EIS, as opposed to the current project boundaries.

■ 6. *Impact of this Agreement and Order on Further Proceedings:* In any further proceedings in this case, this Agreement and Order shall not be construed to preclude the plaintiffs from advancing any contention regarding the legality or reasonableness of the TTW project, nor shall it be construed to preclude the plaintiffs from advancing the contention that any construction work completed or moneys spent subsequent to July 13, 1981, are irrelevant for purposes of assessing the degree of project completion. While plaintiffs are free to raise whatever contentions they wish, defendants at the appropriate times, relying upon the legality and propriety of their actions, shall vigorously resist plaintiffs' contentions; nor shall the defendants be precluded from maintaining that all expended costs to the date of any hearing must be considered to assess the public interest realistically.

7. *Minimization and Monitoring of Environmental Impacts:* The Corps shall take the following steps to minimize and monitor environmental impacts occasioned by any construction which is allowed to take place for the duration of this agreement:

(a) It shall provide for natural flows in the channel of the Tombigbee River, by making its best efforts to ensure that the upper and lower ends of completed river cutoffs do not become closed. To evidence this commitment, the Corps specifically promises to make available up to $250,000 to be used in the effort to ensure that completed river cutoffs remain open;

(b) It shall continue to monitor turbidity in the Tombigbee River and in the navigation channel in the river section at points where turbidity may be increased substantially by construction activity, and beginning February 1, 1982, it shall report to the plaintiffs monthly on the results of this monitoring;

(c) It shall continue to monitor water quality, including turbidity, in the Tombigbee River and in the navigation channel at seven stations in the river and canal sections, and beginning February 1, 1982 and on the first working day of every other month thereafter it shall report to the plaintiffs on the result of this monitoring;

(d) It shall minimize siltation in conjunction with any construction activity by making its best efforts to prevent or retard erosion, runoff, or land disturbance.

8. *Monitoring:* For the duration of this Agreement and Order the Corps shall establish and maintain a monitoring system to ensure that the terms of this Agreement and Order are satisfied. Reports of the monitoring shall be provided to the plaintiffs on a monthly basis. The Corps will include in these reports a list of new construction contracts, and new non-construction contracts over $100,000, which are scheduled for award during the next succeeding month, as well as the most recent non-supervisory employment figures for the river and canal sections. The initial report shall include an estimate of suspension costs and employment impacts occasioned by this Agreement and Order.

9. *Force Majeure:* For the purposes of complying with this Agreement and Order, any action taken by the Corps in necessary response to any acts of God or other *force majeure,* not within the control of the Corps, shall not be considered a violation of this Agreement and Order on the part of the Corps.

10. *Modification:* This Agreement and Order shall not be modified for its duration except upon agreement of the parties, or upon order of the Court.

11. *Binding Effect:* This Agreement and Order shall apply to and be binding

upon the parties, their officers, agents, successors, and assigns, and upon all parties acting under, through, or for, or in active concert or participation with the parties. In addition, the Corps will issue written directives to its TTW contractors instructing them to comply with the terms of this Agreement and Order.

/s/ Jon T. Brown
JON T. BROWN
/s/ Stephen E. Roady
STEPHEN E. ROADY
Attorneys for Plaintiffs and Plaintiff-Intervenors
/s/ James T.B. Tripp
JAMES T.B. TRIPP
Attorney for the Environmental Defense Fund
J. PAUL McGRATH
Assistant Attorney General
GLEN H. DAVIDSON
United States Attorney
/s/ David J. Anderson
DAVID J. ANDERSON
/s/ Lawrence A.G. Moloney
LAWRENCE A.G. MOLONEY

/s/ Richard A. Levie
RICHARD A. LEVIE
/s/ Marta Berkeley
MARTA BERKELEY
Attorneys for Federal Defendants
/s/ Hunter Gholson
HUNTER GHOLSON
Attorney for Defendant-Intervenor Tennessee-Tombigbee Waterway Development Authority
/s/ James Hugh Ray
JAMES HUGH RAY
Attorney for Defendant-Intervenor Tombigbee River Valley Water Management District
/s/ Charles A. Graddick
CHARLES A. GRADDICK
Attorney for Defendant-Intervenor the State of Alabama

So ORDERED this 30th day of December, 1981

/s/ William C. Keady
WILLIAM C. KEADY
United States District Judge

APPENDIX A

## APPENDIX B

TYPICAL GATED SPILLWAY SECTION
SCALE IN FEET

VICINITY MAP

PLAN

SCALE IN FEET

Mileage is Navigation Miles from the foot
of Government Street, Mobile, Alabama.

Elevations are in feet and refer to National Geodetic Datum.

Area of
Work Suspension

TYPICAL LOCK SECTION
SCALE IN FEET

WATERWAY CONNECTING THE TOMBIGBEE AND
TENNESSEE RIVERS, ALABAMA AND MISSISSIPPI

## LOCK 'D'

REVISED TO 30 SEPTEMBER 1980

OFFICE OF THE DISTRICT ENGINEER
MOBILE, ALABAMA

APPENDIX C 2

TYPICAL GATED SPILLWAY SECTION
SCALE IN FEET

VICINITY MAP

PLAN
SCALE IN FEET

Mileage is Navigation Miles from the foot of Government Street, Mobile, Alabama.

Elevations are in feet and refer to National Geodetic Datum.

TYPICAL LOCK SECTION
SCALE IN FEET

WATERWAY CONNECTING THE TOMBIGBEE AND
TENNESSEE RIVERS, ALABAMA AND MISSISSIPPI

LOCK 'E'

REVISED TO 30 SEPTEMBER 1980

OFFICE OF THE DISTRICT ENGINEER
MOBILE, ALABAMA

## MEMORANDUM ORDER

KEADY, Chief Judge.

This court is confronted with a dispute between the parties as to the meaning to be accorded the opinions of the United States Court of Appeals for the Fifth Circuit rendered July 13 and August 17, 1981, reversing in part the October 1, 1980, final judgment of the district court, and remanding the cases for proceedings in accordance with those opinions. In the July 13 opinion, the court stated:

> On the issue of the need for a supplemental EIS, we reverse the judgment of the district court and remand the cause for entry of summary judgment for the plaintiffs. The most important remedy available is that the Corps must immediately prepare a supplementary EIS covering all of the changes in the design and economic projections for the TTW that we have discussed in parts IV.A.–D. of this opinion. The EIS must comply with all the requirements of NEPA, both procedural and substantive.
>
> In order to encourage rapid and thorough compliance with NEPA, it is appropriate to impose some injunctive remedy until a final supplemental EIS is filed. A blanket injunction of construction on the entire TTW is not justified, however, because the bulk of this project has been discussed in a valid EIS. The injunction that would most closely fit the Corps' specific violation of NEPA is one targeted directly at some of the major post-1971 changes in the TTW that will be discussed in the supplemental EIS. We therefore direct the trial court immediately to enjoin (1) the construction or letting of contracts on the chain-of-lakes segment and the cutoffs of the Tombigbee River channel, and (2) any activity significantly affecting the environment of the land acquisitions planned after 1971.
>
> The district court may allow specific exemptions from this injunction at the request of the Corps and after an evidentiary hearing. Such exemptions shall be granted only if the Corps demonstrates

by a preponderance of the evidence that the public interest will suffer irreparable harm, but not based merely upon future increases in cost of construction. The district court shall retain jurisdiction pending the submission of a final supplemental EIS. At that time, the district court may issue whatever order it finds to be appropriate and consistent with this opinion.

> . . . . .

> We direct the district court to impose a temporary injunction affecting certain segments of the waterway, pending the submission of a final supplemental EIS in accord with this opinion. The district court should retain jurisdiction of this cause until that document is submitted to the court, at which time the district court may enter a final order.

651 F.2d 983 at 1006–07.

On August 17, the court, in denying the motion for rehearing sought by the State of Alabama and other intervenors which had stressed the harm resulting from a layoff of 3,000 workers, stated:

> The District Court need not issue its injunction until an opportunity is afforded the parties to be heard on the consequences of an injunction to them and to the public. Furthermore, if the current activity is so extensive that an immediate cessation would necessarily be greatly expensive and harmful, the District Court may in its discretion choose to delay the imposition of an injunction until after a reasonable period is allowed for the Army Corps of Engineers to complete and submit its supplemental EIS.

The mandate as issued on August 24, 1981, directed reversal in part "in accordance with the opinion of this Court," without explicit instructions.

Plaintiffs contend that although the Supplemental Environmental Impact Statement (SEIS) has now been filed within the time ordered by the district court, nevertheless injunctive relief should remain in effect until a final order adjudicating the adequacy of the SEIS and the Corps' compliance,

both procedurally and substantively, with National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., as amended, other federal laws and Corps regulations. The government stoutly disputes this contention, and asserts that under the Fifth Circuit's order no injunctive relief should be maintained in effect after the filing of the SEIS, and that plaintiffs, in actuality, seek the benefit of a preliminary injunction against further work on the project without establishing prerequisites for such relief. Plaintiffs concede that they do not presently ask for a preliminary injunction and that they have not established such prerequisites. Even so, they urge that the Court of Appeals' mandate requires the granting of the relief sought by their motion to continue in effect work suspension heretofore agreed to.

■ I construe the quoted portions of the July 13 opinion, insofar as injunctive relief is concerned, to require the district court to immediately enjoin those specific aspects of the project on which the Army Corps of Engineers had not prepared and submitted an EIS as required by NEPA; and the district court was authorized to allow only specific exemptions at the Corps' request and after evidentiary hearing, provided the Corps demonstrated that the public interests would suffer irreparable harm from the work stoppage, apart from mere increase in construction costs occasioned by delay. I construe the court's August 17 opinion as a modification of its prior opinion, by granting discretionary authority to the district court to delay an injunction until the parties were given an opportunity to be heard on the consequences of an injunction to them and to the public. Moreover, the Court of Appeals expanded the discretion of the district court to permit it to refrain from issuing any injunction during such period of time as it might reasonably determine the Corps should have to complete and submit the SEIS.

Construing the July 13 and August 17 opinions together, I conclude the intent of the Court of Appeals to be that because of the Corps' failure to prepare and submit an EIS on the post-1971 design changes, an injunction was proper as an incentive to the Corps to comply with NEPA "in as rapid and thorough a manner as is reasonably possible," and also to maintain the status quo existing as of July 13-August 17, 1981, until the filing of the SEIS so that the "relevant decisionmakers and the public may still have the opportunity to choose among alternatives, as required by NEPA." 651 F.2d at 1005–06.

The prior opinion that the district court should immediately issue an injunction, however, was relaxed by the August 17 opinion which vested the trial court with discretion not to issue an injunction at all *unless the Corps failed to file a SEIS within a reasonable period of time.* In the event the Corps failed to submit a SEIS within a reasonable period of time, the district court was mandated to enjoin those portions of the project affected by the Corps' omission in not preparing an EIS in the first instance. It is the language of the August 17 opinion which plaintiffs erroneously seize upon to argue that the district court *must* grant injunctive relief *once the SEIS is filed.* They thus construe the appellate opinion to mean that although the district court is authorized *to not enjoin* during the period of time reasonably required for preparing and filing the SEIS, it must issue an injunction upon the filing of the SEIS to remain in effect until final order adjudicating its adequacy. This interpretation does not accord with reason or common sense, nor is it required by the appellate court opinions. The Corps' delinquency, which the Court of Appeals characterized as "blatant violation" of NEPA, was in failing to prepare and submit a SEIS on the post-1971 project changes. Neither the Court of Appeals nor this court has yet found that the Corps has submitted a SEIS which is inadequate or fails to comply with NEPA, other federal laws or agency regulations. Those issues simply have not yet been reached in this litigation.

It is my duty to faithfully adhere to the clear intent of the Court of Appeals and to carry out its mandate. Certainly, at this

juncture it is neither the purpose nor function of the district court to alter, modify, reduce or expand controlling orders of the Fifth Circuit. Since remand, this cause has been handled by the district court in precisely that manner. On September 2, 1981, the district court, after conferring with counsel, entered an order on three issues:

1. Granted summary judgment in favor of the plaintiff, Louisville & Nashville Railroad Company on the claim that the defendants violated the Water Resources Act of 1974 as well as the applicable Corps regulation and in favor of all plaintiffs that the defendants violated National Environmental Policy Act for failing to prepare and submit Supplemental Environmental Impact Statement on the changes noted by the Court of Appeals.

2. Determined that a SEIS could be prepared and filed with the clerk of court within a period of nine months from September 2, 1981, thereby fixing June 1, 1982, as the expiration of a reasonable time for the allowance of the SEIS submission, and ordered defendants to file same not later than June 1, 1982. The order also allowed plaintiffs sixty days from receipt of the SEIS within which to file objections, stating the grounds therefor. Absent objection, the court provided that the defendants might then apply to the court for a final order terminating the action. It was also provided that upon plaintiffs' timely objections, the district court would "upon notice to all parties after allowing discovery for a reasonable period of time, conduct an evidentiary hearing to resolve issues raised by plaintiffs as to the sufficiency of the final EIS as well as the Corps' compliance, both procedurally and substantively, with NEPA and relevant Corps regulations, and enter a final order. At any such evidentiary hearing plaintiffs shall have the burden of proof as to all issues raised in their objections."

3. After exploring the problems and complexities incident to an evidentiary hearing to consider granting immediate injunctive relief on portions of the project, the court consented for counsel to attempt to resolve the question and obviate the necessity for hearing. Accordingly, the scheduling of the evidentiary hearing was deferred until further notice.

On December 30, 1981, the parties presented the court with a consent order which was approved. By the terms of this order, defendants were prohibited from awarding three new contracts, were halted in performing certain work in the Columbus Lake Navigation Channel and in the canal section, and were made subject to other restraints. It was expressly provided that "this agreement and order shall be in effect until 60 days after the filing of the Supplemental Environmental Impact Statement (SEIS) with the court clerk. Any further proceedings in this case shall be in accordance with the court's order of September 2, 1981, or such other orders as the court may enter."

On April 27, 1982, the Army Corps of Engineers filed a SEIS. Within 60 days, or on June 28, plaintiffs filed objections to the SEIS as well as the present motion for continuance of work suspension in line with the terms of the December 30, 1981 order.

Following receipt of legal memoranda from counsel, I conducted a brief evidentiary hearing on July 19, to determine what mechanical steps or procedures the Corps had taken from the July 13, 1981, Fifth Circuit opinion and the district court order of September 2, 1981, until the filing of the SEIS, as well as agency procedures followed subsequent to the SEIS filing. This evidence established that eighteen different steps were taken by the Corps incident to the preparation of the SEIS. See chart attached to order of September 2, 1981. Defendants established documentation supporting the fact that each step was taken. D. Ex. 2. A draft Supplemental Environmental Impact Statement (DSEIS) was initially prepared and circulated to interested parties, agencies and the public; a public meeting was held to consider the draft and receive comments. Requisite periods for review and comment were granted, and notice published in the Federal Register. The final SEIS was circulated among interested

parties and agencies and made subject to review and comment, both before and after the April 27 filing. Comments and responses to the SEIS, D. Ex. 5, were received by the Corps, which made no modification to the document on file. Upon the closing of the comment period on June 14, 1982, the SEIS and all supporting or opposition material were submitted to E.R. Heiberg III, Major General, United States Army, Director of Civil Works, who on June 30, 1982, in an apparently reasoned analysis which purported to cover all points in issue, concluded: "I find that the continued construction and completion according to the preferred plan described in the SEIS represent the course of action that I believe serves the public interests of the United States." This conclusion appears in the Record of Decision, D. Ex. 7. With the filing of this document, all mechanical steps and procedures required by NEPA and the Corps' regulations have been satisfied.

The foregoing recitation of evidence overwhelmingly demonstrates that the two-volume document filed in court and entitled "Final Supplement to the Environmental Impact Statement" is the product of the Corps completed in accordance with the steps which were envisioned at the time of the entry of the September 2, 1981 order. Since the SEIS was filed within the prescribed time, the Corps is not in default, and there is no basis for the issuance of injunctive relief at this time.

Counsel for plaintiffs, in oral argument, stated that the district judge, in the September 2 conference proceedings, stated that the Corps "cannot go forward on this project after that EIS is submitted until it may receive approval." This offhand remark appears in a 72-page colloquy between the court and opposing counsel who were consistently advocating conflicting positions to the two questions then posed by the court: (1) what would be a reasonable time for preparing and filing the SEIS; and (2) when and on what subjects an evidentiary hearing for limited injunctive relief should be held. In any case, the isolated remark was not a part of the district court's order, nor is it consistent with the opinions of the Court of Appeals.

Plaintiffs' motion for continuation of work suspension is denied.